IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| The Catholic Benefits Association, on behalf of its members; Bismarck Diocese,<br><br>                                  Plaintiffs,<br><br>vs.<br><br>Andrea R. Lucas, Acting Chair of the United States Equal Opportunity Commission;[1] United States Equal Employment Opportunity Commission,<br><br>                                  Defendants. | Case No. 1:24-cv-00142 |

### ORDER ON MOTIONS BEFORE THE COURT

[¶ 1]   THIS MATTER comes before the Court on two Motions for Summary Judgment. The Plaintiffs (collectively, "CBA")[2] filed their motion on November 12, 2024. Doc. No. 35. CBA also moved for a Permanent Injunction the same day. Doc. No. 45. Defendants (collectively, "EEOC") responded on December 6, 2024. Doc. No. 43. CBA replied on January 02, 2025. Doc. No. 46. EEOC also moved for Summary Judgment on December 6, 2024. Doc. No. 39. CBA responded on January 2, 2025. Doc. No. 47. EEOC replied on January 17, 2025. Doc. No. 48. For the reasons set forth below, the Court **GRANTS** CBA's Motion Permanent Injunction; **GRANTS, in part, and DENIES, in part,** CBA's Motion for Summary Judgment; and **DENIES** EEOC's Motion for Summary Judgment.

---

[1] Since the filing of the Complaint, Andrea R. Lucas has become the Acting Chair of the EEOC, replacing Charlotte Burrows, the former Chair. Pursuant to Federal Rule of Civil Procedure 25(d), Lucas is automatically substituted as a defendant.

[2] One CBA member has filed a separate lawsuit for relief, and therefore, is not included here to the extent the relief overlaps with the other case. Doc. No. 35, p. 2 n.2.

- 1 -

## BACKGROUND

[¶ 2]   Congress passed the Pregnant Workers Fairness Act ("PWFA" or the "Act") requiring employers to "make reasonable accommodations to the known limitations related to the pregnancy, childbirth, or related medical conditions of a qualified employee." 42 U.S.C. § 2000gg-1. The Act applies to employers with fifteen or more employees. Id. § 2000gg(2)(B). The statute defines a "known limitation" as a "physical or mental condition related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions" without regard to the definition of disability in the Americans with Disabilities Act. Id. § 2000gg(4). Employers may not take adverse actions against employees, including refusing to accommodate or taking employment action against an employee for requesting an accommodation. Id. § 2000gg-1. Also, employers may not "coerce . . . or interfere with any individual in the exercise or enjoyment of . . . any right granted or protected by the PWFA." 29 C.F.R. § 1636.5(f)(2). The Act allows private action after administrative remedies are exhausted, and the EEOC has investigative and enforcement powers under PWFA as it does under Title VII. Id. § 2000gg-2(a)(1).

[¶ 3]   Congress directed EEOC to issue regulations to carry out PWFA, specifically to include examples of reasonable accommodations. Id. § 2000gg-3. After generating over 100,000 comments to the proposed rule, EEOC issued "Implementation of the Pregnant Workers Fairness Act" ("Final Rule" or "Rule"), effective June 18, 2024. 89 Fed. Reg. 29096 (Apr. 19, 2024) (codified at 29 C.F.R. pt. 1636). The Final Rule defines "related medical conditions" to include termination of pregnancy—specifically listing abortion—and potential or intended pregnancy— namely, fertility treatment. 29 C.F.R. § 1636.3(b). In vitro fertilization is listed in the appendix to the Rule as a qualifying event. Id. app. A § 1636.3(a)(2).

[¶ 4]   In addition, EEOC issued a "Enforcement Guidance on Harassment in the Workplace" ("Enforcement Guidance" or "Guidance"), "communicat[ing] the Commission's position on important legal issues." Doc. No. 22-1, p. 1. The document states its contents "do not have the force and effect of law and are not meant to bind the public in any way." Id. at 2. However, the document is intended to "provide clarity to the public regarding existing requirements" of Title VII. Id.

[¶ 5]   Under Title VII an employer cannot discriminate based on sex, which includes pregnancy. Id. at 15. The Enforcement Guidance states discrimination against sex includes gender identity and how that identity is expressed. Id. at 17. The Guidance gives examples of gender identity discrimination: the use of pronouns inconsistent with individual's gender identity, denial of access to sex-segregated facilities consistent with gender identity. Id. The Guidance also states discrimination can occur related to pregnancy or related medical conditions, which can include "using or not using contraception; or deciding to have, or not to have, an abortion." Id. at 15.

[¶ 6]   Title VII includes an exemption for religious employers. 42 U.S.C. § 2000e(j). PWFA incorporates this exemption. 42 U.S.C. § 2000gg-5(b). The Final Rule declines to adopt a blanket exemption for religious employers and states each determination will be made on a case-by-case basis and religious employers may raise religious defenses at any time. 89 Fed. Reg. at 29146–47. The Enforcement Guidance gives no mention of the exemption and instead discusses religious defenses in context of charges and investigations. Doc. No. 22-1, pp. 98–99. EEOC states harassment would not include "*any* workplace discussion of religious perspectives on certain issues, such as abortion or gender identity," and determinations can be reviewed de novo in subsequent litigation. Id. at 96, 99.

[¶ 7] CBA challenged the Final Rule and the Enforcement Guidance on nine counts for violations of the Religious Freedom Restoration Act ("RFRA"), the Administrative Procedure Act, the First Amendment, and Title VII. Doc. No. 1, ¶¶ 165–236.

[¶ 8] On September 23, 2024, this Court granted CBA a preliminary injunction. Doc. No. 31. The Court found (1) CBA established associational standing, (2) the issues were ripe for adjudication, and (3) CBA was entitled to a preliminary injunction. Id.

## DISCUSSION

[¶ 9] Summary judgment is granted if the evidence, viewed in a light most favorable to the non-moving party, indicates no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See Davison v. City of Minneapolis, 490 F.3d 648, 654 (8th Cir. 2007); Fed. R. Civ. P. 56(a). The Court finds summary judgment appropriate because the facts of this case are not in dispute. See Doc. No. 40, p. 19.

### I. Standing

[¶ 10] EEOC argues CBA does not present "specific facts" proving each element of standing and therefore this case should be dismissed for lack of subject-matter jurisdiction. Doc. No. 39, p. 20.

[¶ 11] EEOC presented the same arguments at the preliminary injunction hearing and in Tennessee v. EEOC. See Doc. Nos. 31, ¶¶ 12–29; Tennessee v. EEOC, 129 F.4th 452, 458 (8th Cir. 2025). The Eighth Circuit recently held in Tennessee that seventeen states have standing against EEOC to challenge the PWFA even though no action had been taken against them because the States "are the direct objects of the EEOC's rule, and the Rule injures the States by requiring them to act contrary to their established policies." 129 F.4th at 458.

[¶ 12] The Court notes that since the preliminary injunction, EEOC initiated several actions against employers under the PWFA last September. See e.g., EEOC v. Lago Mar Props., Inc., No.

0:24-cv-61812 (S.D. Fla. Sept. 30, 2024); EEOC v. Kurt Bluemel, Inc., No. 1:24-cv-02816 (D. Md. Sept. 30, 2024); EEOC v. Polairs Indus. Inc., No. 5:24-cv-01305 (N.D. Ala. Sept. 25, 2024); EEOC v. Urologic Specialists of Okla., Inc., No. 4:24-cv-00452 (N.D. Okla. Sept. 25, 2024); EEOC v. Wabash Nat'l Corp., No. 5:24-cv-00148 (W.D. Ky. Sept. 10, 2024). While these cases do not include religious employers, these cases are evidence of EEOC's intent to enforce this Act and there is a credible threat.

[¶ 13]   The Court notes that administrations have changed since preliminary injunction. The Court finds persuasive the reasoning in a case against the EEOC about the PWFA from the Western District of Missouri. See The Stanley M. Herzog Foundation v. EEOC, No. 4:24-cv-00651 (W.D. Mo. Mar. 18, 2025). That court states the current "Acting Chair has indicated her intent to revisit the Final Rule once the EEOC regains a quorum of commissioners"; however, "in the meantime the Final Rule remains the law" and "the EEOC cannot disavow enforcement or act to change the Final Rule at this time." Doc. No. 53-1, p. 10 (order granting preliminary injunction Herzog).

[¶ 14]   The Court finds the events between now and preliminary injunction only bolster CBA's standing. Therefore, this Court adopts its previous reasoning, Doc. No. 31, ¶¶ 12–28, and concludes CBA has standing, the issues are ripe, and this Court has subject matter jurisdiction over this case.

## II. Permanent Injunction

[¶ 15]   CBA asks the Court to convert the preliminary injunction into a permanent injunction as no further factual findings are necessary for judgment. Doc. No. 36, p. 14. EEOC reiterates the same arguments from preliminary injunction that the PWFA does not violate RFRA and otherwise is lawful. Doc. No. 48, p. 9–10. The Court interprets this to mean that EEOC agrees no further argument is needed and the Court may decide the merits from the previous briefing on the issue.

[¶ 16]   Permanent injunctions require a court to consider: (1) threat of irreparable harm to the movant, (2) the balance between the harm and injury to other parties, (3) actual success on the merits, and (4) public interest. Laredo Ridge Wind, LLC v. Neb. Pub. Power District, 11 F.4th 645, 654 (8th Cir. 2021). When the government is the opposing party, harm to other parties and public interest merge. See Morehouse Enters., LLC v. ATF, 78 F.4th 1011, 1018 (8th Cir. 2023).

[¶ 17]   The facts and evidence in this case have not changed since the preliminary injunction was issued. Non-compliance with PWFA would "have substantial adverse practical consequences" and CBA's religious beliefs would be violated. Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania, 591 U.S. 657, 692 (2020) (J. Alito, concurring). EEOC has not met the burden of proving a compelling interest. See Braidwood Mgmt., Inc. v. EEOC, 70 F.4th 914, 940 (5th Cir. 2023).

[¶ 18]   The Court adopts its previous reasoning and finds that CBA succeeds on the merits of its claim that the Act violates their rights under RFRA. Doc. No. 31, ¶¶ 31–48. Therefore, the Court **GRANTS** summary judgment on that claim, **DENIES without prejudice** the rest of the claims alleged, and declines to reach the alternative relief requested.

### III.   Scope of Injunction

[¶ 19]   CBA does not request any change to the scope of the preliminary injunction. See Doc. No. 36. EEOC makes the same arguments as to scope that it made during preliminary injunction. See Doc. Nos. 31, ¶¶ 49; 48, p. 8–9. The Court adopts its previous reasoning and finds the scope of the injunction is appropriate and required to avoid violation of CBA's rights. Doc. No. 31, ¶¶ 50–52.

**CONCLUSION**

[¶ 20]   For the foregoing reasons, the Court **GRANTS** CBA's Motion for Permanent Injunction (Doc. No. 45), **GRANTS in part and DENIES in part** CBA's Motion for Summary Judgment (Doc. No. 35), and **DENIES** EEOC's Motion for Summary Judgment (Doc. No. 39).

[¶ 21]   The Court **DECLARES** that the Final Rule and Enforcement Guideline that require CBA to accommodate an employee's participation in or advocacy of an abortion or infertility treatments violates their sincerely held religious beliefs without satisfying strict scrutiny under RFRA. Accordingly, the Court **PERMANENTLY ENJOINS AND RESTRAINS** as follows:

(1) The EEOC and its agents are permanently enjoined from interpreting or enforcing the Pregnant Workers Fairness Act and any implementing regulations, including the Implementation of the Pregnant Workers Fairness Act, against the Diocese of Bismarck and the CBA, including present and future members, in a manner that would require them to accommodate abortion or infertility treatments that are contrary to the Catholic faith, speak in favor of the same or refrain from speaking against the same.

(2) The EEOC and its agents are permanently enjoined from interpreting or enforcing Title VII of the Civil Rights Act of 1964, any implementing regulations or guidances, including the Enforcement Guidance on Harassment in the Workplace, against the Diocese of Bismarck and the CBA, including present and future members, in a manner that would require them to speak or communicate in favor of abortion, fertility treatments, or gender transition when such is contrary to the Catholic faith; refrain from speaking or communicating against the same when such is contrary to the Catholic faith, use pronouns inconsistent with a person's biological sex; or allow persons to use private spaces reserved for the opposite sex.

(3) The EEOC and its agents are permanently enjoined from applying or enforcing these same regulations against anyone acting in concert with or participating with the CBA's present and future members.

(4) The EEOC and its agents are specifically permanently enjoined from initiating any investigation into claims that a covered employer has violated PFWA or Title VII in the manner listed above and issuing any notice of right-to-sue under prohibited claims.

(5) To come within this permanent injunction, CBA members must: be a member of CBA at the time of the alleged violation, not yet be protected from the laws at issue here, be approved by CBA for meeting membership criteria, the membership criteria has not substantively changed since filing this Complaint, and the member is not subject to an adverse ruling on the merits in another case involving the laws at issue here.

[¶ 22]  Nothing in this order shall prevent EEOC or its agents from accepting of a charge against a CBA member, serving notice of charges to employers protected by this injunction, or issuing a letter to employees saying the employer is covered under this injunction and investigation is precluded.

[¶ 23]  The Court retains jurisdiction of this matter as necessary for enforcing this Court's orders.

[¶ 24]  **IT IS SO ORDERED.**

DATED April 15, 2025.

Daniel M. Traynor, District Judge
United States District Court